UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANEELA RAFIQUE, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>PREMIER FINANCIAL ALLIANCE, INC., et al.,<br><br>   Defendants. | Case No. 23-cv-00732-JST<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO LIFT STAY**<br><br>Re: ECF No. 45 |

Before the Court is Plaintiffs' motion to lift the stay of this case pending arbitration. ECF No. 45. The Court finds this motion suitable for resolution without oral argument, *see* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b), and will now grant the motion.

## I.   BACKGROUND

This is an employment case brought by Plaintiffs Aneela Rafique, Haidee Collado, and John Soo-Hoo against Defendants Premier Financial Alliance, Inc. ("PFA"), David Carroll, and Jack Wu. ECF No. 1. Defendants moved to compel arbitration, ECF No. 17, and the Court held that motion in abeyance after it found "genuine issues of material fact as to whether the parties formed an arbitration agreement," ECF No. 37 at 3 (quoting *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021)). The Court ordered the parties to meet and confer and "file a joint case management statement proposing a case schedule for resolving the disputed facts over whether an agreement to arbitrate was formed." *Id.* at 4. The Court twice approved the parties' stipulated request to extend the deadline to file such a statement. ECF Nos. 40, 42.

On February 2, 2024, the parties filed a statement that they had agreed to arbitrate Plaintiffs' claims with the American Arbitration Association ("AAA") "pursuant to the 2019 Arbitration Agreements" signed by each Plaintiff, except that they agreed to "a single arbitration

proceeding with the three Plaintiff's [sic] claims arbitrated together." ECF No. 43 at 2. On February 5, 2024, the Court approved the parties' stipulated requests and ordered: "AAA will conduct a single proceeding to resolve all three Plaintiffs' claims. This case is stayed pending completion of that arbitration." ECF No. 44 at 1.

Plaintiffs initiated arbitration with the AAA and paid an initial $350 filing fee on May 31, 2024.[1] ECF No. 45-6 at 2. On June 17, the AAA sent a letter addressed to Scott Wellman, counsel for Plaintiffs, and Mark Figueiredo, counsel for Defendants, stating that the arbitration would "be administered in accordance with the Employment Due Process Protocol and the AAA's Employment Arbitration Rules"; explaining that Plaintiffs' portion of the filing fee was $350 per employee, or $1,050 total; requesting payment of the $700 balance from Plaintiffs by June 24; and stating that Defendants owed a "non-refundable fee in the amount of $2,100." ECF No. 45-7 at 2. Plaintiffs paid the $700 balance on June 19, 2024. ECF No. 45-6 at 71.

On June 20, the AAA sent an email to the parties stating, "Payment has been received and we will follow up with formal correspondence to both parties shortly." *Id.* at 74. The email was sent to Havaja Frljuckic, a paralegal at Plaintiffs' counsel's law firm; two attorneys at that firm; and five people at Defendants' counsel's firm: Figueiredo, Ethan Solove, Jessica Nwasike, Christopher Ford, and comcaddy@structurelaw.com, which appears to be intended to reproduce Christopher Addy's email address. *Id.*

Also on June 20, the AAA sent a letter addressed to Wellman and Figueiredo explaining that the AAA would not be applying the Employment Arbitration Rules after all. Instead, because the parties' dispute was "between an individual independent contractor (who has provided services as an individual and is not incorporated) and a business or organization," the AAA's preliminary determination, "subject to review by the arbitrator, [was] to apply the Commercial Arbitration Rules and Employment/Workplace Fee Schedule." ECF No. 45-8 at 8. The letter stated that the AAA had received Plaintiffs' $1,050 portion of the filing fee and "request[ed] that the company pay its share of the fee in the amount of $2,100.00 on July 22, 2024." *Id.* (emphasis omitted). The

---

[1] The record is unclear regarding the reason for the delay between the Court's ordering the parties to proceed to arbitration and the initiation of the arbitration proceedings.

1  letter explained, in bold print:

2
3
4
5
6
> The invoice attached shall serve as the invoice pursuant to
> California Code of Civil Procedure Sections [sic] 1281.97.  Payment
> is due on upon [sic] receipt of this invoice.  As this arbitration is
> subject to California Code of Civil Procedure 1281.97, payment
> must be paid by July 22, 2024 or the AAA will close the parties'
> case.  Pursuant to California Code of Civil Procedure [Section]
> 1281.97, the AAA cannot grant any extensions to this payment
> deadline.

7  *Id.* (emphasis omitted).  Attached to the letter was an invoice addressed to Figueiredo for $2,100.

8  *Id.* at 3.  The invoice included the same warning about the payment deadline:

9
10
11
12
> **IMPORTANT NOTE:**  This arbitration is subject to California
> Code of Civil Procedure [Section] 1281.97, and payment must be
> paid within 30 days of the initial notice or the AAA will close the
> parties' case.  Pursuant to California Code of Civil Procedure
> [Section] 1281.97, the AAA is unable to extend the payment
> deadline.

13  *Id.* at 4 (emphasis in original).

14       On July 15, 2024, the AAA sent a reminder letter addressed to both Scott Wellman and

15  Figueiredo, stating:

16
17
18
> We have not yet received payment from the respondent to cover
> their portion of the filing fee, as described in our letter dated
> June 20, 2024.  **Please note in accordance with California Code of
> Civil Procedure [Sections] 1281.97 and 1281.98, the AAA will
> close its case on July 22, 2024 if payment is not paid.**

19  ECF No. 45-9 at 3 (emphasis in original).  The letter was emailed to Frljuckic, Solove, Chris

20  Wellman, Addy, Nwasike, Figueiredo, and Scott Wellman.  *Id.* at 2.  Later that same morning,

21  Frljuckic forwarded that email to Figueiredo, Solove, Ford, Addy, and Nwasike, asking Figueiredo

22  and Solove to "[p]lease respond as to the status of [their] submission of payment."  ECF No. 45-12

23  at 2.  She did not receive any response.  ECF No. 45-11 ¶ 5.

24       On July 31, 2024, the AAA sent a letter addressed to Scott Wellman and Figueiredo,

25  emailed to the same recipient list as before, stating that the AAA closed their file because

26  "Respondent has failed to submit the previously requested filing fee within the time required."

27  ECF No. 45-10 at 2–3.

28       Twelve minutes after receiving that email, Solove wrote to the AAA stating, "Due to

3

clerical error, this was inadvertently not paid on our end. We'll be paying now. Can you let us know the necessary steps to facilitate that and get you paid?" ECF No. 48-1 at 8. The AAA responded that the "case may only be re-opened upon receipt of the claimant's consent to re-open the case and receipt of the filing fee," and that, "[a]bsent the claimant's agreement[,] the matter will remain closed." *Id.* at 7. Plaintiffs did not consent to re-opening the arbitration proceedings. *Id.* at 6.

Plaintiffs have now moved the Court to lift the stay and allow them to proceed with their claims in this Court. ECF No. 45. Defendants oppose the motion, arguing that the AAA erroneously relied on California Code of Civil Procedure Section 1281.97; that Defendants did not breach the arbitration agreement or waive their right to arbitrate; and that, in any event, the motion should be denied on grounds of excusable neglect. ECF No. 48.

In support of their opposition, one of Defendants' counsel, Addy, filed a declaration stating that he had "an unexpected leave of absence from all work activities" "[d]ue to the sudden onset and negative progression of both physical and mental ailments," and that he "performed no work activities" from June 7 through August 19, 2024. *Id.* at 1. He also stated that he "was internally designated as the handling attorney" for this case and was "not personally aware of any payment deadline for this case," the first notice of which was sent on June 17, ten days after his leave of absence began. *Id.* at 2. Addy also noted that Plaintiff Collado's son, Romarico Collado, initiated an arbitration "in or around June 2024," and "[t]hat case is strikingly similar to the instant case in terms of pleading length and causes of action and of course each case has 'Collado' in the name as well as the subject line of emails with the American Arbitration Association ('AAA')." *Id.*

## II. DISCUSSION

California Code of Civil Procedure Section 1281.97 provides that if a party that drafted an employment or consumer arbitration agreement is required "to pay certain fees and costs before the arbitration can proceed," that party "is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration" if those fees or costs "are not paid within 30 days after the due date." Cal. Civ. Proc. Code § 1281.97(a)(1); *see also id.* § 1281.97(a)(2) ("To avoid delay, absent an express provision in the arbitration agreement stating

4

the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due upon receipt."). If this occurs, the employee or consumer may, as Plaintiffs seek to do here, "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." Cal. Civ. Proc. Code § 1281.97(b)(1).

Courts in this district have held that the Federal Arbitration Act ("FAA") preempts Section 1281.97. *E.g.*, *Lee v. Citigroup Corp. Holdings, Inc.*, 691 F. Supp. 3d 1157 (N.D. Cal. 2023). Two Courts of Appeal in California have recently split on the question. *Compare Hohenshelt v. Superior Ct.*, 99 Cal. App. 5th 1319, 1325–26 (2024) (finding no preemption), *with Hernandez v. Sohnen Enters., Inc.*, 102 Cal. App. 5th 222, 244 (2024), *reh'g denied* (June 3, 2024) (holding that, "unless the parties have expressly selected California's arbitration provisions to apply to their agreement, the FAA preempts the portion of section 1281.97 that dictates findings of material breach and waiver as a matter of law"). The California Supreme Court has granted review in both cases and has deferred further action in *Hernandez* "pending consideration and disposition of a related issue in *Hohenshelt* . . ., or pending further order of the court." *Hernandez v. Sohnen Enters.*, 553 P.3d 866 (Cal. 2024).

The Court need not decide whether Section 1281.97 is preempted or otherwise did not apply to this arbitration because Plaintiffs' more general waiver argument is dispositive. For the reasons discussed below, the Court concludes that Defendants waived their right to arbitration under general principles of contract law—i.e., without regard to the automatic findings of breach and waiver imposed by Section 1281.97.

As Defendants acknowledge in their opposition brief: "[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." ECF No. 48 at 7–8 (alteration in original) (quoting *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023)). "There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, [courts] consider the totality of the parties' actions." *Hill*, 59 F.4th at 471 (quoting *Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019).

Defendants do not dispute that they knew of the right to compel arbitration—nor could

1  they, as the parties who initially sought to compel arbitration.  Defendants argue that they did not
2  commit intentional acts inconsistent with their right to arbitrate, but the Court disagrees for the
3  reasons discussed below.
4      "Courts have generally found that nonpayment of filing fees demonstrates an act
5  inconsistent with the right to arbitrate."  *Lee*, 691 F. Supp. 3d at 1161 (citing *Brown v. Dillard's,
6  Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2004); *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926,
7  932 (11th Cir. 2019)).  For example, in *Sink v. Aden Enterprises, Inc.*, the Ninth Circuit affirmed
8  an order lifting an arbitration stay where the arbitration provider mailed two letters requiring
9  payment of fees and the defendant "did not pay these costs or inform [the plaintiff] or [the
10 arbitration provider] of [its] inability to pay before the . . . payment deadline."  352 F.3d 1197,
11 1198–99 (9th Cir. 2003).  Likewise, in *Lee*, another court in this district found waiver where the
12 defendant "failed to . . . pay its filing fee in a timely manner, despite receiving a reminder from the
13 AAA regarding this fee and receiving notice by the AAA that failure to pay would result in
14 termination of the proceedings."  691 F. Supp. 3d at 1162.  Defendants in this case received three
15 notices from the AAA, as well as an email from Plaintiffs' counsel's firm inquiring about
16 payment.  Defendants failed to respond to any of these communications.  It was not until the AAA
17 sent an email indicating that the case was closed that Defendants responded—twelve minutes later.
18     Defendants' inaction cannot be explained away, as Defendants argue, as excusable neglect.
19 Unlike in the out-of-circuit authority on which Defendants rely, Defendants can point to no "good
20 faith belief that a settlement has been reached" or that they were "pursu[ing] the case in all other
21 aspects."  ECF No. 48 at 18 (emphasis omitted) (citing *Shaker Heights Bd. of Educ. v. Hemmons*,
22 No. 62160, 1993 WL 87700, at *2–3 (Ohio Ct. App. Mar. 25, 1993)).  Nor does the Court find a
23 "rare and unexpected confluence of events—including Defendant's company closing around the
24 same that that its lawyers changed firms—that are unlikely to be repeated."  *Petrie v. GoSmith,
25 Inc.*, No. 18-cv-01528-CMA-MEH, 2021 WL 3630964, at *2 (D. Colo. July 29, 2021).  Although
26 Defendants submitted a declaration from *one* lawyer who was on a leave of absence, they fail to
27 explain why the other *four* recipients of the communications from the AAA and Plaintiffs' counsel
28 did not respond.  Those other recipients include Figueiredo, the attorney to whom the AAA

1  addressed its correspondence, including the invoice for payment. ECF No. 45-7 at 2; ECF No.
2  45-8 at 3, 8; ECF No. 45-9 at 3. Nor do Defendants explain why Solove responded within minutes
3  of the email closing the case but failed to respond to any other emails. That he did so undermines
4  Defendants' argument that the reason emails to pay the filing fee were met with no response was
5  because another arbitration with a similar name existed. In addition, the subject lines for the
6  emails regarding the arbitration at issue in this case clearly indicated the full case name: "Aneela
7  Rafique;Haidee Collado;John Soo-Hoo v. Premier Financial Alliance, Inc.;David Carroll – Case
8  01-24-0005-7561." ECF No. 45-6 at 74–76 (June 17); ECF No. 45-8 at 5–6 (June 20); ECF No.
9  45-9 at 2 (July 15); ECF No. 45-10 at 2 (July 31). The Court therefore finds unpersuasive
10 Defendants' argument that it was confused by all of these emails because there was another case
11 brought by Romarico Collado. And even if Defendants were confused, there is no indication that
12 they attempted to clarify that confusion with either the AAA or Plaintiffs' counsel. Nor did
13 Defendants ever question whether Section 1281.97 applied to this case, or otherwise ask for any
14 extension to pay the fees.

15 Other courts have found that late payment of arbitration fees did not result in waiver where
16 the defendants had demonstrated by other acts an intent to proceed with arbitration. For example,
17 in *Belyea v. GreenSky, Inc.*, the defendant had "participated in arbitration [and] filed a timely
18 answer before JAMS."[2] 637 F. Supp. 3d 745, 761 (N.D. Cal. 2022). Similarly, in *Miller v. Plex,*
19 *Inc.*, the defendant had "paid its portion of the initial filing fee, submitted an answer and
20 counterclaim in response to Plaintiff's arbitration demand and jointly selected an arbitrator with
21 Plaintiff," and its counsel had "responded to JAMS' follow-up emails, explaining initially that he

---

[2] *Belyea* is also distinguishable because, unlike in this case, the defendant "paid the fees before the arbitration provider terminated the proceeding." 637 F. Supp. 3d at 760. The court distinguished cases finding a breach of the arbitration agreement where, as here, the "arbitration provider terminate[d] the proceedings after sending several notices of unpaid fees." *Id.* (distinguishing *Brown*, 430 F.3d 1004; *Sink*, 352 F.3d 1197; and *Eliasieh v. Legally Mine, LLC*, No. 18-cv-03622-JSC, 2020 WL 1929244 (N.D. Cal. Apr. 21, 2020)). *McLellan v. Fitbit*, on which Defendants rely, is distinguishable for the same reason. No. 3:16-cv-00036-JD, 2018 WL 3549042, at *4–6 (N.D. Cal. July 24, 2018) (imposing sanctions but permitting continued arbitration where the defendant paid fees late but before the "AAA terminated its proceedings after sending several notices of unpaid fees") (distinguishing *Brown*; *Sink*; and *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1289 (10th Cir. 2015)).

was waiting for client approval for the payment and later that the payment was being processed." No. 22-cv-05015-SVK, 2024 WL 348820, at *7 (N.D. Cal. Jan. 30, 2024).  Here, by contrast, there is no evidence that Defendants ever responded to either the AAA or Plaintiffs' counsel after repeated correspondence regarding the arbitration, were in the process of paying the filing fee, or otherwise attempted to participate in the arbitration before the AAA closed the proceedings. Defendants offered to pay the required fees only when faced with the reality of a terminated arbitration proceeding.  Such conduct is inconsistent with the right to arbitrate.  Having considered the totality of the circumstances, the Court concludes that Defendants waived that right.

## CONCLUSION

Plaintiffs' motion to lift the stay in this case is granted.  The Clerk shall re-open the file. The parties shall file a joint case management statement on or before February 11, 2025, and appear for a case management conference on February 18, 2025, at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: December 27, 2024



JON S. TIGAR
United States District Judge